(No. 62943)

RON FREUND *et al.*, Appellants, v. AVIS RENT-A-CAR SYSTEM, INC., *et al.*, Appellees.

*Opinion filed October 17, 1986.*

SIMON, J., took no part.

Robert D. Allison, of Plotkin & Jacobs, Ltd., Marshall Patner, William J. Harte, of William J. Harte, Ltd., and Arnold M. Flamm, of Orlikoff & Flamm, all of Chicago, for appellants.

Michael D. Sher and Sherre Binik Levene, of Neal, Gerber & Eisenberg, of Chicago, for appellee Avis Rent A Car System, Inc.

Thomas F. Ging and James D. Harbert, of Reuben & Proctor, of Chicago, for appellee The Hertz Corporation.

James D. Montgomery, Corporation Counsel, and Judson H. Miner, Acting Corporation Counsel (Mary K. Rochford and Jennifer A. Keller, of counsel), for appellee City of Chicago.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs, Ron Freund and Kathleen Z. Fennell, brought this action in the circuit court of Cook County to recover allegedly excessive amounts of taxes that had been collected from rental car customers by defendants Avis Rent-A-Car, Inc., and Hertz Corporation. The trial judge dismissed the complaint for failure to state a cause of action. The appellate court affirmed that decision (139 Ill. App. 3d 11), and we allowed the plaintiffs' petition for leave to appeal (103 Ill. 2d R. 315(a)).

The plaintiffs commenced their action on October 6, 1982. They alleged in their complaint that they had rented cars from Avis and Hertz offices located in Chicago and that the companies had inaccurately calculated several State and local taxes, resulting in slight overcharges. Named as defendants in the complaint, in addition to the two rental companies, were the State Treasurer and the Director of the Illinois Department of Revenue, who are responsible for administering the

State taxes involved here, and the city of Chicago. The plaintiffs sought to recover the amounts in question in their own behalf and on behalf of similarly situated classes of persons.

In count I of the complaint plaintiff Ron Freund alleged that he rented a car from Avis on October 1, 1982. He signed a rental agreement, agreeing to pay $18 a day for the rental of the car; he also elected the collision-damage waiver, at a cost of $5.50 a day. Freund returned the car two days later, and the form was completed at that time. According to the complaint, the form showed a total charge of $56.92, computed in the following manner:

| "Automobile Rental (2 days) | $36.00 | |
|---|---|---|
| Collision Damage Waiver | | |
| (2 days) | 11.00 | |
| Sub Total | $47.00 | |
| Tax, at 11% | 5.17 | |
| Refueling Service | 4.75 | |
| Net Amount Due | · | $56.92" |

Freund alleged that Avis erred by including the cost of the collision-damage waiver in the base on which the taxes were calculated. According to Freund, the taxes should have been imposed on the rental charge alone, and the correct amount therefore would have been 11% of $36 rather than 11% of $47, which would have resulted in taxes $1.21 less than what he had paid.

Plaintiff Fennell, in count II of the complaint, made similar allegations against Hertz. Fennell rented her car on September 24, 1982, and signed a rental agreement, agreeing to pay a rental charge of $49 a day for the car; she also elected the collision-damage waiver, at a daily cost of $6. Fennell returned the car the next day, and the rental form was completed at that time. According to the complaint, the form showed a total charge of $72.19, computed in the following manner:

"Auto Rental (1 day) $49.00
'Rental Tax, 6%' 2.94
'Refueling Service' 8.23
Collision Damage
 Waiver (1 day) · 6.00
 Sub-Total $66.17
City of Chicago Trans-
 actions Tax, Effective
 Rate—5.7% 3.77
Personal Accident
 Insurance 2.25
 Net Amount Due: $72.19"

Fennell alleged that there were two errors in the computation of the bill: the rate for the first tax computation shown on the form should have been 5% rather than 6%, and the base on which the Chicago transaction tax was calculated should not have included the costs of the collision-damage waiver or the refueling service. Like Freund, Fennell contended that the taxes should have been computed on the rental charge alone, and therefore the correct amount in her case would have been 11% of $49, which would have resulted in taxes $1.32 less than what she had paid.

There were three taxes involved here: (1) a tax of 4% assessed under the Automobile Renting Occupation and Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, pars. 1701 through 1704), (2) a tax of 1% authorized by the Municipal Automobile Renting Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 24, par. 8—11—7) and imposed by ordinance (Chicago Municipal Code secs. 132—49 through 132—50 (1983)), and (3) a 6% Chicago transaction tax, imposed by ordinance (Chicago Municipal Code secs. 200.1 through 200.1—11 (1983)). In essence, Freund contended that Avis should not have included the collision-damage waiver in the computation of any of the three taxes. Fennell argued that Hertz should have assessed

the first two taxes at a combined rate of 5% rather than 6% and that the company should not have included the costs of the collision-damage waiver and refueling service in the computation of the city transaction tax. It should be noted in Fennell's case that an effective rate of 5.7% was given for the city's transaction tax; the effect of computing the tax at the lower rate was to eliminate the amount of State tax included in the base, thus preventing the imposition of a tax on a tax.

The trial court dismissed the action under the voluntary-payment doctrine, finding that the plaintiffs had paid the amounts in question without protest and that the rental agreements, which listed the amounts of the various charges, contained sufficient information from which the plaintiffs could have determined to protest the charges. Following the dismissal of the complaint, the plaintiffs filed an amendment to the complaint in which they made further allegations of their lack of knowledge of the overcharges and their inability to determine the alleged errors from the face of the forms. The complaint as amended also was dismissed. For a time the plaintiffs' action had been consolidated with two others involving similar claims, but the other actions eventually were settled, and the consolidation order was vacated.

The appellate court affirmed the dismissal of the action, holding that the voluntary-payment doctrine precluded the plaintiffs from bringing the action. The court rejected the plaintiffs' principal argument that they could not have known, from the information contained in the rental forms, the methods by which the various charges were calculated. In the appellate court the plaintiffs made a number of other arguments against the dismissal of their action, but those contentions also failed, and they are not raised in this court. Moreover, it should be noted that although the appellate court agreed with the plaintiffs that the taxes had been calculated incor-

rectly, the rental companies observe that they have not conceded the impropriety of including charges for the collision-damage waiver and refueling service in the base of one of the taxes here, the 6% Chicago transaction tax. We note further that the propriety of the bases on which the taxes were calculated has not been made an issue at this stage of the proceedings.

The voluntary-payment doctrine has been expressed in the following terms:

> "It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion." (*Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541.)

As a general matter, taxes paid voluntarily, though erroneously, may not be recovered without statutory authorization. (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 48; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 59.) The rule is applicable to payments made to an intermediary (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 343-44; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 59-60), and there is no contention here that the rental companies retained the disputed amounts and were unjustly enriched by them. Instead, the plaintiffs argue that their payments were not voluntary, and although no protests were made at the time of payment to signify opposition to the charges and forestall a finding of voluntariness (see *Isenstein v. Rosewell* (1985), 106 Ill. 2d 301, 309), the plaintiffs would find that protests were unnecessary here. They would apply here the statement

in *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, that in some circumstances the lack of a protest may be excused:

> "Though payment under protest is the typical means by which a taxpayer signifies his contention that a tax or charge was improper, the absence of such a protest does not, without more, require application of the voluntary-payment doctrine. It must also be shown that the taxpayer plaintiff had knowledge of the facts upon which to frame a protest and also that the payments were not made under duress or compulsion."

The plaintiffs believe that *Getto* governs here and that their failure to protest the charges may be excused. They argue that the forms used by the rental companies were confusing and obscure and did not provide sufficient information on which protests of the charges could have been made.

The taxpayer in *Getto* sued to recover, in his own behalf and on behalf of others, invalid amounts of a municipal message tax included in bills for telephone service. He had paid the amounts without protest for a lengthy period, and, against the argument that recovery of past overcharges was precluded by the voluntary-payment doctrine, the court found that the taxpayer could not fairly have been charged with sufficient knowledge upon which to base a protest. The court described the bills involved in that case as follows:

> "Getto's phone bills, which were attached to his complaint, show three separate charges near the bottom of the bill for 'U.S. Tax,' 'State,' and 'City.' The State and city charges are each followed by an asterisk, which, in the lefthand margin of the bill, is explained as 'Additional charges due to State and City Taxes.' We do not view this purported disclosure of 'facts' to be sufficient to warrant application of the voluntary-payment doctrine as the defendants argue, so as to preclude recovery for the earlier years in question.

Though the charge designated 'City' does appear separately on the subscriber's bill, it is not stated which municipal tax is involved, or what portion of the bill is being taxed or that the charge includes a 3% charge on the message tax for costs of accounting. Too, with the information provided by his bill, the subscriber has no way of ascertaining that the message tax, which is passed on to him by Bell, was calculated by Bell by applying the 5% tax to the utility's gross receipts, which not only included customer billings, but other customer receipts and the message tax itself." (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49-50.)

It appears, then, that the telephone bills showed only lump sums for the various taxes and disclosed neither the rates at which the taxes were calculated nor the items on which the taxes had been imposed. Because the plaintiff therefore could not have discovered the scheme of the calculations from the face of his telephone bills, the court held that recovery of past overcharges, though they had been paid without protest, was not barred by the voluntary-payment doctrine.

The plaintiffs believe that the rental forms used here are as unclear as the telephone bills in *Getto* and therefore did not provide sufficient information on which to base a protest. They would derive from *Getto* a rule that taxes must be specifically identified in the bill or form and that the charges included in the basis for the computation must be shown clearly. With respect to the forms used here, the plaintiffs complain that both the Avis and the Hertz forms failed to disclose which parts of the bill were being taxed, that the Avis form did not say what taxes were being imposed or mention the city transaction tax at all, that the Hertz form did not identify the taxes aggregated in the description "Rental Tax 6%," precluding the customer from realizing that it included an extra 1% tax that had never actually been imposed, and that the Hertz form stated the rate of the city's

transaction tax as 5.7% rather than 6%. The plaintiffs conclude that they were not supplied with sufficient information from which they could have framed a protest.

In contending that the rental forms here had to identify the particular taxes as well as show their rates and bases of computation, the plaintiffs overstate the requirements of *Getto*. The deficiencies of the telephone bills in that case were numerous, and we do not interpret the summary of the defects and omissions in the bills there as constituting a list of separate requirements that must be satisfied in every case. In this case the companies' billing forms not only disclosed the rates at which the taxes were computed but also made clear what items were being included in the bases for the calculations. On each form the amounts of the specific charges, which were labeled, appeared in a column. The structure of the forms themselves revealed which charges were being taxed and which were not. The combined rate of the three taxes was 11%, and that was correctly set out on the Avis form. That the Hertz form contained an extra 1% charge included in the "Rental Tax 6%," which in the record is attributed to another tax that was authorized but never actually imposed, is not support for the plaintiffs' position, for the question here is not whether mistakes occurred but whether the customer should have been able to discern the nature and basis of the particular charges. That the Hertz form gave an "effective rate" of 5.7% for the city transaction tax did not render the agreement unclear, for the form specifically identified the tax, and it was apparent that the collision-damage waiver and refueling charges were included in its base.

We would note, too, that the forms used here are consistent with certain statutory requirements regarding the State taxes. The Automobile Renting Occupation and Use Tax Act provided, "The tax imposed by this Section

shall, when collected, be stated as a distinct item separate and apart from the rental price of the automobile." (Ill. Rev. Stat. 1981, ch. 120, par. 1704.) Moreover, the Municipal Automobile Renting Occupation Tax Act provided, "Persons subject to any tax imposed pursuant to the authority granted in this Section may reimburse themselves for their tax liability hereunder by separately stating such tax as an additional charge, which charge may be stated in combination, in a single amount, with State tax which sellers are required to collect under the 'Automobile Renting Occupation and Use Tax Act' pursuant to such bracket schedules as the Department may prescribe." (Ill. Rev. Stat. 1981, ch. 24, par. 8—11—7.) Thus, the first provision forbade rental companies to express the use tax and the rental price as a single sum, and the second provision permitted the companies to combine the two State taxes.

Unlike the telephone bills in *Getto*, the forms used here were essentially self-contained; they showed the tax rates and items being taxed, and we believe that the forms contained sufficient information such that protests were not excused. (See *Lusinski v. Dominick's Finer Foods, Inc.* (1985), 136 Ill. App. 3d 640 (action to recover allegedly incorrect amounts of use tax charged by defendant retailers on nonreimbursable store coupons barred by voluntary-payment rule, for cash-register receipts showed the cost of the purchases, the value of the coupons redeemed, and the amount of tax charged); *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146 (payment without protest of 25¢ tax on admission tickets to an amusement park; action precluded by voluntary-payment doctrine; charge was stated separately on the ticket and was described there as a village admission tax).) Our decision here is, we believe, consistent with *Getto. Cf. Illinois Institute of Technology v. Rosewell* (1985), 137 Ill. App. 3d 222 (taxpayer could recover ex-

cess real estate taxes paid without protest because of unavailability at time of payment of records from which taxpayer could have realized that customary tax exemption had not been taken into account).

As a final point, the plaintiffs believe that a decision in favor of the rental companies will generally limit the recovery of overcharges by the public to those few cases in which recovery without protest is authorized by statute, or when payment is made under circumstances amounting to compulsion or duress. We decline to consider here the plaintiffs' suggestion that payment with a notation of protest would have been unavailing (but see *Ross v. City of Geneva* (1978), 71 Ill. 2d 27 (approving customer's notation of protest on check used to pay allegedly invalid tax on electric bill)). Nor do we consider the plaintiffs' related fears that payment under protest would distinguish the protester from all others and therefore disqualify him as a class representative, or that a protest would signify compliance with counsel's advice, possibly leading to charges of champerty, maintenance, or barratry. None of these questions are presented as issues by the record before us, and we intimate no views on them. We hold simply that the plaintiffs here are precluded by the voluntary-payment doctrine from maintaining their action.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.