ADRIENNE GEARY *et al.*, suing for themselves and on behalf of others similarly situated, Plaintiffs-Appellees, v. DOMINICK'S FINER FOODS, INC., *et al.*, Indiv. and as representative defendants, *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 86—2523, 86—2529 cons.

Opinion filed February 16, 1988.

2

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Jennifer A. Keller, Assistant Corporation Counsel, of counsel), for appellants City of Chicago and Charles Sawyer.

Glenn E. Schreiber, of Chicago (Madigan & Getzendanner, of counsel), for appellant Dominick's Finer Foods, Inc.

Charles G. Chester and Thomas H. Donohoe, both of Chicago (Martin, Craig, Chester & Sonnenschein, of counsel), for appellant Jewel Food Stores, Inc.

Michael D. Sher, of Chicago (Neal, Gerber & Eisenberg, of counsel), for appellant Walgreen Co.

Sidney N. Herman, Jonathan B. Newcomb, and Miriam M. Bahcall, all of Chicago (Kirkland & Ellis, of counsel), for appellant K mart Corporation.

Sidney Z. Karasik and Anne M. Burke, both of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

This class action arises out of the payment of various State and local taxes on the purchase of certain hygienic products. The named

plaintiffs are three women who bought tampons and sanitary napkins from certain retailers in the City of Chicago and who paid the city's sales tax on those purchases. The defendants are four retailers: Dominick's, Jewel, Walgreen and K mart (retail defendants); the Illinois Department of Revenue and its director R. Thomas Johnson (State defendants); the City of Chicago and its director of revenue, Charles Sawyer (city defendants); and the Regional Transportation Authority (RTA).

Plaintiffs' first amended complaint alleged that the Illinois retailers' occupation tax and Illinois use tax had been illegally collected on the sale of tampons and sanitary napkins and asked for, most significantly, a permanent injunction and restitution. Plaintiffs also requested the same relief regarding allegedly illegal City of Chicago taxes, RTA taxes, and the municipal retailers' occupation tax.

The circuit court entered an order on February 24, 1985, wherein it: (1) struck the plaintiffs' claims for injunctive relief as to the Illinois retailers' occupation tax and Illinois use tax as moot since the State no longer categorized tampons and sanitary napkins as medical appliances, though the claim for restitution was not so struck; (2) struck all claims arising from purchases made more than five years before the complaint was filed based on the applicable five-year statute of limitations; (3) struck two counts which improperly combined causes of action based on the Chicago sales tax and the Chicago municipal retailers' occupation tax, although it allowed the plaintiffs to amend their complaint as to these counts; and (4) dismissed the allegations regarding the RTA tax. The court also held that the plaintiffs did not plead sufficient facts alleging that the defendants failed to disclose the imposition of the subject taxes, but that the allegation in the complaint that tampons and sanitary napkins are medical necessities of life was sufficient to constitute duress and thereby avoid the effect of the voluntary payment doctrine.

Thereafter the plaintiffs amended their complaint to plead properly as to the city taxes, and the court denied the motion of the city defendants to dismiss those counts. In separate orders entered September 2, 1986, the circuit court certified, pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308), the issue which was raised by both the retail defendants and the city defendants concerning whether the plaintiffs sufficiently pleaded duress in order to overcome the voluntary payment doctrine by asserting that tampons and sanitary napkins are necessities. The court also certified a question pertaining to the city defendants as to whether tampons and sanitary napkins are exempt from the Chicago sales tax as "medical appliances." The ensu-

ing appeals of the retail defendants and the city defendants were consolidated for appeal by this court. The State defendants have indicated that they choose to rely on the retail defendants' brief, while the RTA is not a party to this appeal.

OPINION

■ Both the retail and city defendants contend that the plaintiffs have not complied with the voluntary payment doctrine; therefore, we must determine whether the plaintiffs have standing to challenge the imposition of the subject taxes. Our supreme court has depicted the essence of the voluntary payment doctrine as follows:

> "As a general matter, taxes paid voluntarily, though erroneously, may not be recovered without statutory authorization. (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 48; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 59.) The rule is applicable to payments made to an intermediary (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 343-44; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 59-60) ***." *Freund v. Avis Rent-A-Car System, Inc.* (1986), 114 Ill. 2d 73, 79, 499 N.E.2d 473.

■ The Chicago sales tax is levied on purchases of tangible personal property sold at retail within the city's limits. (Chicago Municipal Code, par. 200.6—3 (1981).) The State of Illinois has both a use tax and a retailers' occupation tax, as described in the following passage:

> "The Retailers' Occupation Tax Act imposes a tax upon persons engaging in selling tangible personal property at retail. The amount of the tax is computed as a specified percentage of the gross receipts of such sales at retail. *** The retailer is required to remit the tax to the Illinois Department of Revenue. Ill. Rev. Stat. 1965, ch. 120, par. 442.
>
> The Use Tax Act complements the Retailers' Occupation Tax Act. [Citation.] It imposes a tax, at the same rate as the retailers' occupation tax, upon the privilege of using in this State tangible personal property purchased at retail. (Ill. Rev. Stat. 1965, ch. 120, par. 439.3.)" (*Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 54-55, 319 N.E.2d 5.)

The result of this taxing scheme "is to shift the tax burden to the consumer by allowing the retailer to recoup its payment for retailers' occupation tax by withholding remittance of an equal amount of proceeds collected under the Use Tax Act." (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 340, 348 N.E.2d 161.) Accordingly, the major focus of the case at bar is on the use tax, not the retailers' occupation tax.

■ The plaintiffs acknowledge the existence of the voluntary payment doctrine as elucidated in *Freund,* and further concede that they did not protest the taxes when they paid them. They argue that they should nevertheless be entitled to raise their claim, relying on the following quotation from *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, 426 N.E.2d 844, *cert. denied* (1982), 456 U.S. 946, 72 L. Ed. 2d 468, 102 S. Ct. 2012:

> "Though payment under protest is the typical means by which a taxpayer signifies his contention that a tax or charge was improper, the absence of such a protest does not, without more, require application of the voluntary-payment doctrine. It must also be shown that the taxpayer plaintiff had knowledge of the facts upon which to frame a protest and also that the payments were not made under duress or compulsion."

The plaintiffs devote a portion of their brief to a discussion of the reasons upon which they base their contention that they did not have enough information to protest the subject taxes. As the city defendants note in their reply brief, however, that issue is not properly before this court. The circuit court concluded that the plaintiffs had sufficient information on which they could have protested, but that ruling was not certified for appeal in this case. The plaintiffs' argument that the defendants were unjustly enriched by receiving the "float" on the Illinois use tax also is not an issue properly before this court. Moreover, even if it were before this court, the plaintiffs could not prevail on the merits because, as the retail defendants note, the administrative code requires them to prepay the Illinois retailers' occupation tax. Therefore, they did not receive any benefit from the float.

The plaintiffs argue that since they pleaded that tampons and sanitary napkins are necessities, they have satisfied the duress test of *Getto.* They rely upon two Illinois Supreme Court cases.

The first case involved the payment of taxes on electrical service. (*Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342.) The court in *Ross* held that it was prudent of the plaintiff to make the payment in order to avoid the very real threat of having his service terminated and that the protest was evidenced by a notation on the checks he used to pay the purportedly illegal tax. (*Ross,* 71 Ill. 2d at 33-34.) Meanwhile, in *Getto* the court held that the threat of terminating telephone service constituted duress. (*Getto,* 86 Ill. 2d at 52.) Therefore, these two cases are readily distinguished from the case at bar for the reason that duress was present in both instances, not because they involved services which the court deemed essential, but be-

cause the plaintiffs certainly would have had their service shut off if they had refused to pay the disputed taxes.

■■ In the instant case, the plaintiffs were never threatened by anyone, for any reason. This court has stated that to constitute duress "there must be some actual or threatened power believed to be possessed by the payee over the payor from which the latter has no reasonable means of immediate relief except by paying the tax." (*Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 151, 452 N.E.2d 10.) In a case prior to *Isberian*, this court held that the plaintiff's subjective apprehension of injury was insufficient to constitute duress for the purposes of the voluntary payment doctrine because there must be an actual or threatened injury committed against the plaintiff. (*Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 97, 337 N.E.2d 305.) In a more recent case this court has gone even further, holding that a threat 10 months prior to the payment of the subject taxes was not immediate enough to constitute duress. *Goldstein Oil Co. v. County of Cook* (1987), 156 Ill. App. 3d 180, 509 N.E.2d 538.

■■ In the instant case, the plaintiffs did not plead that the defendants had coercive power over them or had ever threatened them. Moreover, any such threat would also have had to involve a significant injury and would have had to be sufficiently immediate. The plaintiffs do not plead that they were threatened in such a manner and there is no evidence in this record upon which they could base such a claim. Accordingly, we conclude that the case *sub judice* does not meet the requirements set forth in *Isberian* for constituting payment under duress. Indeed, our case is analogous to *Lusinski v. Dominick's Finer Foods, Inc.* (1985), 136 Ill. App. 3d 640, 483 N.E.2d 587, wherein the plaintiff objected to the payment of the Illinois use tax on the stated value of store coupons to buy a variety of items including food, which is clearly a necessity. Nevertheless, the court summarily rejected the plaintiff's argument that the relevant purchases were made under duress. (*Lusinski*, 136 Ill. App. 3d at 645.) The plaintiffs in this case thus cannot be deemed to have acted under duress, even assuming *arguendo* that the subject hygienic products are necessities.

Since we hold that plaintiffs do not have standing to bring their claims, we need not address the substantive question involving the definition of "medical necessities." In conclusion, the plaintiffs do not bring themselves within the exception to the voluntary payment doctrine because pleading that an item is a necessity does not constitute pleading duress. Moreover, it would be futile to allow the plaintiffs

leave to amend because there is nothing in the record which leads us to believe that they could in any way demonstrate duress. It thus appears that there is no set of facts which would enable plaintiffs to plead a viable cause of action herein. Therefore, we reverse the decision of the circuit court.

Reversed.

HARTMAN, P.J., and STAMOS, J., concur.