GOLDSTEIN OIL COMPANY *et al.*, Plaintiffs-Appellants, v. THE
COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (1st Division)   No. 86—1438

Opinion filed May 18, 1987.

Kreisman & Rakich, of Chicago (Robert D. Kreisman and Lee M. Weisz, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Susan Condon and Arnold F. Block, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order dismissing a complaint for failure to plead an exception to the voluntary payment doctrine.

Plaintiffs Goldstein Oil Company and Novelly Oil Company are general partners of Apex Oil Company (Apex). Apex is in the business of buying, selling, and marketing gasoline and a variety of other petroleum products at wholesale to distributors and retailers. It maintains a key petroleum product storage facility at Forestview, Illinois.

In 1983, defendants Edward J. Rosewell (Rosewell), Cook County collector, and John J. Gallagher (Gallagher), Cook County auditor, made a demand upon Apex for payment of Cook County gasoline taxes on sales of gasoline by Apex to a retailer identified as Emanuel Torbati, doing business as Gas Center, between June 29, 1982, and June 9, 1983. At that time, there was in effect a Cook County ordinance entitled the Retail Sale of Gasoline Tax (gasoline tax), which provided as follows:

"A tax is hereby imposed on the retail sale in Cook County of gasoline at a rate of three cents per gallon or fraction thereof. Such taxes to be paid by the purchaser. Nothing in this ordinance shall be construed to impose a tax upon the occupation of distributors, suppliers or retail gasoline station operations." Cook County, Ill., Ordinances & Resolutions of the County of Cook sec. 13—110 (1980).

The practice has been that when a gasoline retailer does not

have a Cook County tax number, the county will look to the seller for collection of the gasoline tax. In this case, Torbati's registration had been rescinded, so the county demanded payment from Apex.

The complaint alleges that commencing in August 1983, defendant Gallagher, the Cook County auditor, in telephone conversations with Apex personnel, threatened to shut down the Forestview storage terminal if Apex failed to pay the tax. The complaint also alleges that in separate letters, Gallagher threatened the initiation of immediate legal action if the demanded tax payments were not made forthwith. On June 29, 1984, Apex remitted to defendant Rosewell the sum of $51,197.56.

Subsequently, Apex became involved in litigation with Torbati in a case pending before the United States District Court for the Northern District of Illinois, Eastern Division (Goldstein Oil Co. v. Emanuel Torbati, d/b/a Gas Center, No. 84 C6527). On December 20, 1984, Torbati's deposition was taken in that case. Torbati testified under oath that none of his purchases of gasoline from Apex were resold to customers in Cook County.

On the basis of Torbati's deposition testimony, Apex concluded that it was not liable for payments under the gasoline tax with respect to its sales to Torbati as Torbati did not sell product bought from Apex in Cook County. In its first amended complaint, Apex sought the refund of the $51,197.56 it had paid. The trial court dismissed the complaint as barred by the voluntary payment of taxes doctrine and plaintiff now brings this appeal. We affirm.

■ In Illinois it is the general rule that a taxpayer may not recover taxes which have been paid voluntarily. (*Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 85 N.E. 200; accord *Burley v. Lindheimer* (1937), 367 Ill. 425, 11 N.E.2d 926.) The plaintiff here does not dispute the general rule but argues that it falls within the exception to this doctrine which was enunciated in *Illinois Glass* and *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844, *cert. denied sub nom. Illinois Bell Telephone Co. v. Getto* (1982), 456 U.S. 946, 72 L. Ed. 2d 468, 102 S. Ct. 2012. Under the exception, the voluntary payment doctrine is not a bar to a taxpayer's suit for recovery of taxes where the payments were made under duress or compulsion or where the taxpayer had no knowledge of the facts upon which to frame a protest. *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541, 85 N.E. 200; *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 48-49, 426 N.E.2d 844, *cert. denied sub nom. Illinois Bell Telephone Co. v. Getto* (1982), 456 U.S. 946, 72 L. Ed. 2d 468, 102 S. Ct. 2012.

■ In construing the sufficiency of the first amended complaint, we must accept well-pleaded facts as true; however, the pleadings are to be strictly construed against the pleader. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 421, 430 N.E.2d 976.) In a claim for a refund of taxes, involuntary payment is an element of the taxpayer's *prima facie* case, and if a complaint fails to plead a sufficient factual basis to support this element, the action is subject to dismissal. (*Russell v. Hertz Corp.* (1985), 139 Ill. App. 3d 11, 16, 487 N.E.2d 630, *aff'd sub nom. Freund v. Avis Rent-A-Car System, Inc.* (1986), 114 Ill. 2d 73; *United Private Detective & Security Association, Inc. v. City of Chicago* (1977), 56 Ill. App. 3d 242, 244, 371 N.E.2d 1087, *appeal denied* (1978), 71 Ill. 2d 606.

In support of its contention that it has properly pleaded coercion, plaintiff cites *Benzoline Motor Fuel Co. v. Bollinger* (1933), 353 Ill. 600, 187 N.E. 657, where the court held that virtual or moral duress is sufficient to prevent a payment made under its influence from being voluntary. The court in *Benzoline* stated:

> "Where such duress is exerted under circumstances not justified by law it need only be sufficient to influence the apprehensions and conduct of a prudent business man. If the duress is exerted by one clothed with official authority or who is exercising a public employment, less evidence of compulsion or pressure is required." *Benzoline Motor Fuel Co. v. Bollinger* (1933), 353 Ill. 600, 607, 187 N.E. 657.

Plaintiff contends that Gallagher, clothed with official authority as auditor of Cook County, threatened to shut down Apex' Forestview facility and that the closure of the facility would have had a severe, disruptive impact on Apex' business activities in the Chicago area. On this basis plaintiff asserts that Gallagher's threats constitute sufficient duress to avoid the voluntary payment doctrine.

■ We believe that plaintiff's allegations of coercion fail to show that the payment was made under legal duress. The sole basis of the alleged duress was the purported threat to close the Forestview facility. However, the complaint alleges only that the threat occurred 10 months prior to the payment. Nothing in the record indicates that any action was taken against the plaintiff, nor did defendant initiate any lawsuit in the ensuing 10 months. Moreover, as the trial court noted, a review of the ordinance in question plainly shows that it includes no enforcement provisions which would permit the closing of Apex' facility. The lapse of time and the lack of intervening action are sufficient to show that the complaint is factually deficient as a matter of law to show that the payment was made under com-

pulsion.

The authorities relied upon by the plaintiff are all factually distinguishable. The plaintiff in *Edward P. Allison Co. v. Village of Dolton* (1962), 24 Ill. 2d 233, 181 N.E.2d 151, had a contract with the defendant village for electrical work, was threatened by a village official that the work would be stopped unless certain license and inspection fees were paid, and was faced with severe penalties or loss of his contract. The plaintiff contested the validity of the fees and the ordinance imposing them, and the court held that under such circumstances payment was not so voluntary as to preclude the plaintiff from contesting the validity of the fees.

In *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342, the plaintiff sought recovery of money paid to defendant city under certain allegedly invalid ordinances. As in *Allison*, the plaintiff in *Ross* paid the surcharge being challenged and indicated on the check that the payment was made under protest. Since it was defendant city's policy to terminate electric service to users in the event of nonpayment, plaintiff was confronted with the choice of payment of the surcharge or termination of service. The court determined that in making the payment, plaintiff acted with prudence and was therefore not barred from recovery of the sums paid.

Similarly, the plaintiffs in *United Private Detective & Security Association, Inc. v. City of Chicago* (1977), 56 Ill. App. 3d 242, 371 N.E.2d 1087, *appeal denied* (1978), 71 Ill. 2d 606, were under immediate economic pressure to pay certain license fees where they were subject to a penalty of up to $1,000 or six months' imprisonment or both for each day they operated without a license. Plaintiff here was under no such immediate economic threat as would warrant an exception to the voluntary payment doctrine.

■ Plaintiff also contends that various letters sent by defendant Gallagher constitute duress in that they threatened legal action against Apex if the tax was not paid. Where the action is threatened in an honest belief that a good cause of action exists, a threat to institute a civil suit does not constitute duress. See, *e.g., Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 187, 182 N.E.2d 706.

■ The letters in issue explain how the amount of taxes due to the county was arrived at and state that if no response was received from Apex the matter would be turned over to the office of the State's Attorney. The letter dated September 6, 1983, states that an investigation under the ordinance indicated a liability to the county and that the distributor was required to collect the tax from its customers and remit it to the county. The letter dated May 8,

1984, advised Apex that Torbati's registration had been rescinded, that sales made to Torbati should include the Cook County gasoline tax, and that the tax received should be remitted to Cook County.

All of the letters in question merely state the basis of the demand on Apex and that the matter would be referred to the State's Attorney's office, as would be appropriate with respect to all civil actions by the county to collect taxes. Thus the letters do not constitute duress that would bring plaintiff within an exception to the voluntary payment doctrine.

■ Apex also contends that it has properly pleaded the absence of knowledge with which to formulate a tax protest. Apex asserts that at the time it paid the gasoline tax it did not have knowledge of all relevant facts with respect to its sales to Torbati. Apex points out that the tax is applicable only to the retail sale of gasoline within Cook County. According to Apex, it did not learn that Torbati sold none of the product within Cook County until his deposition was taken on December 20, 1984, in the Federal suit of Goldstein Oil Co. v. Emanuel Torbati, d/b/a Gas Center, No. 84 C6527, over six months after the taxes had been paid. Apex asserts that it was only through the discovery process, by securing Torbati's truthful testimony upon penalty of perjury, that it was able to determine conclusively that the sales to Torbati were exempt from taxation.

Plaintiff relies on *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844, *cert. denied sub nom. Illinois Bell Telephone Co. v. Getto* (1982), 456 U.S. 946, 72 L. Ed. 2d 468, 102 S. Ct. 2012, in which the plaintiff challenged the method of calculating a municipal message tax. The tax involved appeared separately on each utility bill and the bill included the explanation "additional charges due to state and city taxes." The bill did not indicate which municipal tax was involved, what portion of the bill was being taxed, or that the charge included a percentage charged for costs of accounting. The supreme court reasoned that the taxpayer had no way of ascertaining the method of calculating the message tax and therefore refused to bar the action under the voluntary payment doctrine.

Here, unlike the situation in *Getto*, the facts were not obscured nor were they inaccessible, as plaintiff claims. Plaintiff simply failed to investigate the county's claim of liability and the basis upon which the county was seeking the tax from Apex rather than from . Torbati. The ordinance made it clear that the tax was a percentage of retail sales, and plaintiff had also been notified of the exact amount of the tax.

Plaintiff also relies on *Illinois Institute of Technology v. Rosewell*

(1985), 137 Ill. App. 3d 222, 484 N.E.2d 837, in which the court held that the voluntary payment doctrine was inapplicable. *IIT* does not support plaintiff's position. In *IIT*, the plaintiff received notice of a significant increase in the assessed valuation of its property. Property record cards which contained the basis for calculating the increased assessments were maintained by the defendants but were not made available for the plaintiff's inspection. The plaintiff paid its property taxes in full and then filed a complaint in the circuit court of Cook County alleging that the increase in property taxes was excessive.

In contrast to the plaintiff here, the plaintiff in *IIT* had attempted to ascertain the basis of the tax but was unable to do so because it was unable to obtain the permanent record card which contained the information it required. The record also showed that the taxpayer made numerous, timely efforts to obtain the relevant information which was in the custody and control of the defendant officials. Here, plaintiff's first amended complaint reflects no effort to obtain the relevant information which was available from Apex' own client and which Apex was obligated under the ordinance to obtain.

■ Apex' argument that it is entitled to a refund based on information obtained in a deposition some six months after the tax was paid is unpersuasive. Where a taxpayer makes no effort to ascertain the factual basis for the tax but pays it anyway, it is legally irrelevant that it later discovers information which may have negated its liability.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and MANNING, JJ., concur.