In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-3619

QUINTEN E. SPIVEY,

*Plaintiff-Appellant,*

*v.*

ADAPTIVE MARKETING LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:07-CV-00779—**Michael J. Reagan**, *Judge.*

ARGUED MAY 18, 2010—DECIDED SEPTEMBER 20, 2010

Before O'CONNOR,[*] *Associate Justice*, and KANNE and
ROVNER, *Circuit Judges*.

O'CONNOR, *Associate Justice* (Ret.).  Quinten E. Spivey
challenges the district court's grant of summary judg-
ment against him on his claims against Adaptive Mar-

[*] The Honorable Sandra Day O'Connor, Associate Justice of
the United States Supreme Court (Ret.), sitting by designation
pursuant to 28 U.S.C. § 294(a).

keting for breach of contract and unjust enrichment. Because we find that no reasonable jury could find in favor of Spivey, we affirm the judgment of the district court.

## I

Appellant Spivey called a telemarketing number in January 2003 and ordered an Atkins diet product. This dispute arises from the rest of that telephone conversation.

## A.

Adaptive has produced a partial recording of what it alleges is the conversation between the telemarketer and Appellant. According to the district court, the recording is as follows:

> Telemarketer: Thank you for your order. We're sending you a risk free 30-day membership to HomeWorks, offering hundreds of dollars in savings at stores like the Home Depot, K-Mart, Linens & Things and many more. After 30 days, the service is extended to a full year for just $8.00 per month, just $96.00 annually. Billed in advance as HomeWorks with the credit card you are using today. You will be charged an annual fee at the end of your 30-day trial period and at the beginning of each new membership year. If you want to cancel, simply call the toll-free number that appears in your kit in the first 30 days and you will not be billed. If you don't save

> hundreds of dollars in your first year, just call and you'll get a full refund. So look for your kit in your mail is that okay?
>
> Male: Okay.

*Spivey v. Adaptive Mktg., LLC*, 660 F. Supp. 2d 940, 943-44 (S.D. Ill. 2009). Adaptive alleges that the male in the conversation was Spivey. Spivey's credit card statements show a charge of $96.00 by HomeWorks in March 2003, a charge of $149.95 by HomeWorks due in January 2004, charges of $199.95 in January 2005 and January 2006, and an additional charge of an undetermined amount in January 2007. *See* Appellee's Resp. App. (RA) at 65-69. After Spivey called to protest the January 2007 charge, $179.70 was refunded. Pl.'s Resp. to Def.'s First Set of Interrogs. at 3, Appellant's Appendix [hereinafter App.] at 56.

In his first amended complaint, Spivey claimed that he did not recall participating in the conversation and could not confirm that the voice in the recording was his. In later filings, Spivey admitted that the male voice in the recording sounds like his voice with a cold, but maintained that the short length of the male's statement prevented him from conclusively determining whether the voice was his. He continued to maintain that he did not recall taking part in the conversation. Pl.'s Resp. to Def.'s First Set of Reqs. for Admis. at 1, RA at 70.

The complaint also avers that Spivey did not receive a "welcome kit" from Adaptive, as discussed in the conversation, or, that if a welcome kit was delivered to his home, it was designed to look like junk mail so that

he discarded it without opening it. In a later deposition, Appellee's attorneys extensively questioned Spivey about the welcome kit, as detailed below:

Q. Can you confirm or deny the welcome kit and the terms and conditions contained in there that you talk about in the other part of your Complaint?

A. Can I confirm or deny—

Q. That you received them.

A. I have no record of receiving them. No knowledge of receiving them.

Q. My question is, can you confirm or deny that you received them? . . .

A. What I can confirm is that I do not have a file that contains anything from Adaptive, and that it is my general practice to open and review all the mail that comes to my home. That's—that's all I can confirm.

. . . .

Q. Can you tell me I did not receive that piece of mail?

A. I can tell you I did not receive that piece of mail.

Q. Okay. It didn't show up at your house, and you threw it away?

A. I do not believe that I did or would have done that.

Q. Okay. It's your testimony and you're swearing under oath—you are taking the oath seriously, I believe that. I just want to make sure I know exactly what you're saying. You're telling me you

did not receive it. You're not telling me I don't remember receiving it. Those are two different things, in my mind.

A. I don't know if I can answer the question any better than that. I have no recollection, no record of receiving it.

Dep. of Quinten E. Spivey, July 9, 2009 at 29-31 [hereinafter Spivey Dep.], App. at 430-32; *see also* Spivey Dep. at 15, RA at 75; Spivey Dep. at 36, RA at 80.

In response to Spivey's testimony about the welcome kit, Adaptive proffered evidence as to its standard business practices. In an affidavit and deposition, Adaptive's Director of Affinity Marketing, Judy Muller, explained that in instances like this one where Adaptive uses a third party to market Adaptive's products, the third party solicits customers, but Adaptive remains responsible for fulfillment, including shipment of membership materials and provision of customer service. Muller Aff. at 2, App. at 514. Specifically, Muller testified that fulfillment includes sending the customer a "self-mailer, 11 by 17 postcard essentially," that contains a list of "benefit providers, a membership card with a membership ID number, terms and conditions, and an 800 number to access the program, as well as a website URL to access the program." *Spivey*, 660 F. Supp. 2d at 947 (quoting Muller Dep.). Muller further testified that after a sale is loaded into Adaptive's database, the fulfillment materials are mailed and usually reach the customer in seven to ten business days. *Id.* She also explained that Adaptive's "corporate policy" is to send renewal notices for annual billings. *Id.*

Adaptive provided a copy of the Membership Agreement that was effective for the period in which Spivey allegedly joined the HomeWorks program and that Adaptive alleges it mailed to Spivey. In relevant part, the Agreement provides:

> **TERMS OF MEMBERSHIP AND MEMBERSHIP AGREEMENT** . . . UPON ENROLLMENT, YOU AGREE TO THESE TERMS AND CONDITIONS. WE URGE YOU TO READ THIS MEMBERSHIP AGREEMENT CAREFULLY AND IF YOU HAVE ANY QUESTIONS, CALL OUR CUSTOMER SERVICE REPRESENTATIVES AT THE NUMBERS LISTED ON YOUR MEMBERSHIP CARD.
>
> . . . .
>
> **2. Membership Term.** Your Membership is effective for a period of twelve months following the membership enrollment date under the annual membership plan or for the period agreed upon under the installment membership plan authorized by You. . . .
>
> **3. Renewal of Membership.** Unless You notify Us that You wish to terminate this Agreement and cancel Your Membership by following the instructions below, your Membership will be renewed automatically and You will be charged the then-effective Membership Fee which will appear on your statement.
>
> **4. Payment of Enrollment Fee.** The payment of your trial period and Enrollment Fee . . . is made automatically by a direct charge(s) to the billing source authorized by You in accordance with the payment

terms to which You agreed. We reserve the right to increase or decrease the Enrollment Fee for each renewal Membership Term effective upon renewal of your Membership. Under the monthly billing plan, We may, at our discretion, increase the monthly Enrollment Fee once in any twelve month period not more than $2.00 per month. . . .

. . . .

**7. Entire Agreement.** This Agreement contains all of the Terms of Membership and no representations, inducements, promises or agreements concerning the Membership not included in this Agreement shall be effective or enforceable. . . .

. . . .

**9. TERMINATION OF MEMBERSHIP.** YOU MAY TERMINATE THIS AGREEMENT AND YOUR MEMBERSHIP AT ANY TIME BY CALLING US AT THE TOLL FREE NUMBER ON YOUR MEMBERSHIP CARD OR BY NOTIFYING US IN WRITING AT MEMBERSHIP SERVICES, P.O. BOX 24311, OMAHA, NEBRASKA. YOUR CANCELLATION WILL BE EFFECTIVE PROMPTLY UPON THE RECEIPT OF YOUR CANCELLATION NOTICE . . . . Doc. No. 122-2, VTRU 01697-01698.

*Spivey*, 660 F. Supp. 2d at 944-45. On these facts and as detailed below, the district court granted Adaptive's motion for summary judgment on all claims.

**B.**

The district court first assessed Spivey's claim that Adaptive breached an oral contract formed during the telemarketing call by charging an annual fee in subsequent years higher than the $96 annual charge mentioned in the telemarketing call. In response, Adaptive pointed to the Written Agreement, which expressly permits increases to the annual enrollment fee. To determine whether Adaptive had breached an oral contract in charging more than $96 per year, the district court had to examine whether there was an oral contract that could have been breached. Citing Illinois law, the court noted that Spivey, as the party seeking relief from an alleged breach, bears the burden of establishing both the existence and terms of the oral agreement. *Id.* at 945. The district court noted Spivey's "reservations" as to whether the call had in fact occurred, but explained that "[i]n order for Spivey's breach of contract claim to go forward, the Court must assume that the conversation, as memorialized above, occurred and that Spivey accepted a trial membership in HomeWorks. If Spivey maintains otherwise, then there was no contract to breach, and his claim must be dismissed." *Id.* at 946. The court accordingly assumed that the conversation had occurred and resulted in the following terms:

> Spivey agreed to accept a risk-free 30-day membership in HomeWorks, which, after the 30-day trial period would be extended to a full year for $8.00 per month, or $96.00 annually. Spivey would be charged an annual fee at the end of the trial period and at the

> beginning of each membership year. Spivey would not be charged if he canceled within the trial period and would receive a full refund if he canceled within the first year. A kit would be mailed to Spivey.

*Id.* The court then turned to the question of whether Spivey was bound by the terms of the written agreement that Adaptive allegedly mailed as part of its welcome kit.

In weighing Spivey's testimony about whether he received the agreement against Adaptive's testimony about its business practices regarding mailing welcome kits, the district court relied on precedents from this circuit holding that "[w]here a letter is properly addressed and mailed, there is 'a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed,'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (quoting *Hagner v. United States*, 285 U.S. 427 (1932)). The district court relied on the Muller deposition as evidence of Adaptive's mailing practices. *See Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993) (holding that a presumption of receipt exists where there is "proof of procedures followed in the regular course of operations which give rise to a strong inference that the [correspondence] was properly addressed and mailed"). The deposition combined with Adaptive's presentation of Spivey's accurate home address provided to the telemarketer, Spivey's equivocal deposition responses to questions asking whether he denied receiving the welcome kit, and Spivey's failure to contend that he did not receive the diet product he ordered in the same tele-

phone call to support a presumption that Spivey received the welcome kit.

The district court then relied on two decisions of this circuit, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), and *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), to conclude that Spivey was bound by the terms of the written agreement because Adaptive invited acceptance by conduct—in this instance, inaction. The district court explained, "By not calling the toll-free number in the first 30 days (or even in the first year)—as advised by the telemarketer *and* set forth in the agreement—Spivey accepted the offered services and the terms and conditions under which they were offered." *Spivey*, 660 F. Supp. 2d at 949. Spivey, the court held, had a "clear mechanism and reasonable opportunity to reject" the service, and having failed to do so, he "is bound by the written terms provided after the transaction." *Id.*

The court also noted that the terms of the alleged oral agreement and the written agreement were not contradictory because the oral agreement did not suggest that the annual price would be forever static at $96 per year. The oral agreement's silence on future increases or decreases, the court held, meant that the written agreement's provision allowing for the increase of the annual charge did not contradict the oral agreement. *Id.* at 950.

Based on its analysis of the existence, applicability, and specific terms of the written agreement, the district court held that there was no genuine issue of material fact in dispute, and Adaptive was entitled to summary judgment. *Id.* The court, however, also provided a second,

independent theory for dismissing Spivey's claims: the voluntary payment doctrine.

Pursuant to the voluntary payment doctrine, a common-law doctrine incorporated into Illinois law, "a plaintiff who voluntarily pays money in reply to an incorrect or illegal claim of right cannot recover that payment unless he can show fraud, coercion, or mistake of fact." *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 666 (7th Cir. 2001) (citing *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1329-30 (Ill. App. Ct. 1995)). The district court held that the doctrine applied to this case because Spivey voluntarily paid credit card charges for HomeWorks in 2003, 2004, 2005, and 2006 and did not challenge any of the charges when they appeared. *Spivey*, 660 F. Supp. 2d at 951. The court rejected Spivey's mistake of fact defense, which rested on the claim that Spivey believed that his wife, a school teacher, had made the charges. The court held Spivey "made no effort to discover the nature of the charge to his credit card and paid it 'in silence.' As a result, [his claim] does not come within the 'mistake of fact' exception to the voluntary payment doctrine." *Id.*

Finally, as relevant to this appeal, the district court rejected Spivey's unjust enrichment claim because such a claim is impermissible where a contract governs the relationship between the parties, and the voluntary payment doctrine would preclude payment anyway. *Id.* at 952.

The district court entered summary judgment for Adaptive on all counts, and Spivey appealed.

**II**

The district court's jurisdiction in this case arose from 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005, which requires, among other things, diversity of citizenship among the parties.[1] This court has jurisdiction under 28 U.S.C. § 1291, and because this is a diversity case, we apply Illinois law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

We review the district court's grant of summary judgment *de novo*, and we must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 992 (7th Cir. 2010). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A factual dispute is "material" only if the dispute's resolution might change the outcome of the suit under the governing law. *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Stokes*, 599 F.3d at 619.

---

[1] Spivey initially filed this suit as a class action, but the district court dismissed it before a class was certified. *See Spivey*, 660 F. Supp. 2d at 952-53.

Spivey argues that the district court erred: 1) in presuming that Spivey received the written terms from Adaptive; 2) by finding that the written agreement governed the relationship between the parties; and 3) in applying the voluntary payment doctrine to bar recovery. Because we decide this case under the voluntary payment doctrine, we need not address the district court's alternative holdings on the existence and implications of an oral and written contract. The voluntary payment doctrine precludes Spivey from recouping his 2003-2006 payments to Adaptive under any theory, and we therefore affirm the district court's grant of summary judgment for Adaptive.

### III

The voluntary payment doctrine has long been recognized in common law and accepted by the Illinois courts whose jurisprudence we apply in this diversity action. The doctrine, stated succinctly, maintains that "[a]bsent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable." *Randazzo*, 262 F.3d at 668 (quoting *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1330 (Ill. App. 1995)); *see also Harris v. ChartOne*, 841 N.E.2d 1028, 1031 (Ill. App. 2005) ("It has been a universally recognized rule that absent fraud, duress, or mistake of fact, money voluntarily paid on a claim of right to the payment cannot be recovered on the ground that the claim was illegal."). The doctrine "applies to any cause of action which seeks to recover a payment on a claim

of right, whether that claim is premised on a contractual relationship or a statutory obligation . . . ." *Id.*

The Illinois courts have explained that the reason for the rule is:

> quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence or under a reservation of right to litigate the claim, and afterward sue to recover the amount paid.

*Smith*, 658 N.E.2d at 1330 (quoting 66 Am. Jur. 2d *Restitution & Implied Contracts* § 94, at 1035-36 (1973)). As this court explained in *Randazzo*, the voluntary payment doctrine "ensures that those who desire to assert a legal right do so at the first possible opportunity; this way, all interested parties are aware of that position and have the opportunity to tailor their own conduct accordingly." *Randazzo*, 262 F.3d at 668.

Adaptive raises the voluntary payment doctrine as an affirmative defense to Spivey's claim. In response, Spivey does not contest that his credit card statements reflected a charge by HomeWorks Plus in 2003, 2004,

2005, and 2006; nor does he contest that he made payments to Adaptive via his credit card company in those years. As the district court noted, the charges, exemplified by the 2006 charge, were visible on Spivey's statement as HomeWorks Plus and provided an accompanying phone number to call about that specific charge. *Spivey*, 660 F. Supp. 2d at 951.

In response, Spivey asserts that he paid the charges under a mistake of fact—a recognized exception to the applicability of the voluntary payment doctrine. *See Randazzo*, 262 F.3d at 668. The mistake Spivey alleges, however, is not one having to do with the actions of the Appellee. Spivey claims that he "believed that HomeWorks Plus was a product that his wife, a school teacher, had purchased." Appellant's Br. at 37. Although Spivey is certainly correct that "HomeWorks Plus" bears a similarity to the "homework" often assigned by teachers, Spivey cannot overcome the voluntary payment defense because he made an erroneous assumption for four years that could have been easily clarified, as it ultimately was, by discussing the charge with his wife and making a call to the phone number provided on his bill.

The relevant facts regarding the basis for and means to challenge the HomeWorks charge were neither obscured, nor inaccessible. *Goldstein Oil Co. v. Cook Cty.*, 509 N.E.2d 538, 542 (Ill. App. Ct. 1987) (rejecting plaintiff's claim that the voluntary payment doctrine was inapplicable because "the facts were not obscured nor were they inaccessible as plaintiff claims" and in fact the rele-

vant information was available "from [plaintiff's] own client"); *see also Randazzo*, 262 F.3d at 667 (explaining that the voluntary payment doctrine "holds that a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution"). As the district court noted, the charge by Adaptive provided the name of the charge as HomeWorks Plus—the name of the product discussed in the telemarketing phone call—and provided a telephone number next to the charge for customers to call. *Spivey*, 660 F. Supp. 2d at 951.

In the five years during which HomeWorks charges appeared on Spivey's credit card bills, "he made no effort to discover the nature of the charge to his credit card and paid it 'in silence.' To the extent that Spivey was ignorant of the charges on his credit card statement, it was because he failed or refused to apprise himself of that knowledge and he must bear the consequences." *Id.* at 951-52. As the Illinois courts have explained, "[I]t is no exception to the voluntary-payment doctrine when the plaintiff makes no effort to ascertain the factual basis of the [charge] but pays it anyway." *Harris*, 841 N.E.2d at 1032; *see also Goldstein Oil Co.*, 509 N.E.2d at 542. Where, as here, "the plaintiff's lack of knowledge could be attributed to its lack of investigation into the defendant's claim of liability and the basis upon which the defendant was seeking the [payment]," *Harris*, 841 N.E.2d at 1032, the Illinois courts have rejected a mistake of fact claim. So do we.

We therefore affirm the district court's grant of summary judgment for Adaptive on the ground that the

voluntary payment doctrine applies in this case and precludes Spivey from recovering the payments to Adaptive.

## IV

Because we hold that the voluntary payment doctrine bars Spivey's claims, we need not and do not reach the alternative contract-based grounds for the district court's entry of summary judgment for Adaptive. For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.