# Illinois Official Reports

## Appellate Court

---

### *Parmar v. Madigan*, 2017 IL App (2d) 160286

---

| | |
|---|---|
| Appellate Court Caption | PAMINDER S. PARMAR, Individually and as Executor of the Estate of Surinder K. Parmar, Plaintiff-Appellant, v. LISA MADIGAN, as Attorney General of the State of Illinois, and MICHAEL FRERICHS, as Treasurer of the State of Illinois, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-16-0286 |
| Filed | April 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-MR-1412; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Nicholas P. Hoeft and Eric H. Jostock, of Jostock & Jostock, P.C., of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Carl J. Elitz and Nadine J. Wichern, Assistant Attorneys General, of counsel), for appellees. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Zenoff and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Paminder S. Parmar, appeals the dismissal of his lawsuit seeking a declaratory judgment concerning an amendment to the Illinois Estate and Generation-Skipping Transfer Tax Act (Estate Tax Act) (35 ILCS 405/1 *et seq.* (West 2014)). We agree with plaintiff that the trial court erred in dismissing his lawsuit as barred on grounds of sovereign immunity. We disagree with defendants, Attorney General Lisa Madigan and Treasurer Michael Frerichs, that the voluntary-payment doctrine provides an alternative ground for affirming the dismissal. Consequently, we reverse the dismissal of the complaint and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3 Plaintiff's decedent, Dr. Surinder K. Parmar, passed away on January 9, 2011. Due to interplay between federal and Illinois law on taxation of estates, which we need not detail here, Parmar's estate was not subject to Illinois estate tax at the time of her death. In fact, since January 1, 2010, there was effectively no Illinois estate tax. See 35 ILCS 405/2(b) (West 2010). Public Act 96-1496, which was introduced as Senate Bill 2505 and became effective on January 13, 2011, revived the Illinois estate tax by amending section 2(b) of the Estate Tax Act (Pub. Act 96-1496 (eff. Jan. 13, 2011) (amending 35 ILCS 405/2(b))). By its terms, the amended section 2(b) applied retroactively to the estates of persons dying after December 31, 2010. 35 ILCS 405/2(b) (West 2014). This included Parmar's estate.

¶ 4 In October 2015, plaintiff, as executor of Parmar's estate, filed his "Complaint for a Declaration of the Constitutionality of the Retroactive Application of the New Illinois Estate and Generation-Skipping Transfer Tax Act under the Illinois Constitution and the United States Constitution." In addition to Attorney General Madigan and Treasurer Frerichs, plaintiff named Constance Beard, Director of the Illinois Department of Revenue, and Governor Bruce Rauner. Plaintiff identified Madigan as "responsible for administering and enforcing [the Estate Tax Act]," Frerichs as "responsible for receiving and refunding monies collected pursuant to [the Estate Tax Act]," Beard as "responsible for maximizing collections of revenues for the State of Illinois in a manner that promotes fair and consistent enforcement of state laws," and Rauner as "responsible for enforcing the laws of the State of Illinois which includes [*sic*] the [Estate Tax Act]." Plaintiff later voluntarily dismissed Beard and Rauner from the lawsuit.

¶ 5 Plaintiff's complaint contained nine counts. Counts I and IX alleged improprieties in the passage of Public Act 96-1496. Specifically, count I alleged that Senate Bill 2505 was not read by title on three different days in each legislative house, in violation of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8). Count IX alleged that one of the promoters of Senate Bill 2505 misrepresented its substance on the floor of the House of Representatives. Citing no authority, plaintiff alleged that the legislator's misrepresentations invalidated the vote on Senate Bill 2505.

¶ 6 Counts II through VII concerned the substance of the amended section 2(b) of the Estate Tax Act. Count II alleged that, under the interpretive dictates of the Statute on Statutes (5 ILCS 70/0.01 *et seq.* (West 2014)) and case law, the amended section 2(b) must be given prospective effect only. Counts III through VII alleged that, if given retroactive application, the amended section 2(b) would violate the due process and takings clauses of the Illinois and federal

constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §§ 2, 15) and the *ex post facto* clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 16).

¶ 7 Finally, count VIII alleged that, since the amended section 2(b) could not lawfully be applied retroactively, all administrative rules issued by Attorney General Madigan that assumed the permissibility of retroactive application were invalid and ineffective.

¶ 8 Plaintiff alleged that he incurred "penalties and interest" on the tax he purportedly owed on Parmar's estate. Plaintiff paid the tax, penalties, and interest "[u]nder duress in order to avoid additional penalties and interest." As relief, plaintiff sought both a declaratory judgment as to the lawful scope of the amended section 2(b) and a refund of amounts paid.

¶ 9 Defendants filed a joint motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)), which permits a party to combine a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2014)) with a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2014)). For their section 2-619 motion to dismiss, defendants raised two affirmative defenses. See *id.* (providing for involuntary dismissal based upon "certain defects or defenses"). First, they asserted that section 1 of the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/1 (West 2014)) barred the proceeding in circuit court, leaving plaintiff with recourse only in the Court of Claims. Second, they claimed that the suit was barred under the voluntary-payment doctrine because, without duress, plaintiff had already paid the estate tax as well as statutory interest.

¶ 10 To support the voluntary-payment defense, defendants submitted an affidavit from John Flores, an assistant Attorney General with the Revenue Litigation Bureau. Flores averred that, in September and October 2012, plaintiff paid the State a total of $559,973 in tax on the Parmar estate. Also in October 2012, plaintiff filed an estate tax return, acknowledging liability for $397,144 in tax, $99,286 in late filing penalties, $23,829 in late payment penalties, and $39,714 in interest (a total of $559,973). Flores noted that plaintiff paid these amounts before the Attorney General had opened a file on Parmar's estate, had asserted any liability, or had made any payment demands. According to Flores, plaintiff later applied for and received a waiver of penalties. After further adjustments, plaintiff was calculated to owe $388,068 in tax and $35,357 in interest. Flores supported his averments with attached documentation, including an estate tax return filed by plaintiff. The return reported the gross value of Parmar's estate at $5 million.

¶ 11 In addition to stating these two affirmative defenses, defendants claimed that several counts in plaintiff's complaint failed to state a claim upon which relief could be granted.

¶ 12 In his response, plaintiff claimed that the legislature clearly waived sovereign immunity for lawsuits like the present one by enacting section 15(a) of the Estate Tax Act, which authorizes a circuit court "to hear and determine all disputes in relation to a tax arising under [the] Act." 35 ILCS 405/15(a) (West 2014).

¶ 13 At a hearing on the motion to dismiss, the trial court determined that section 15(a) was "not an explicit waiver of sovereign immunity" and that "proper jurisdiction is with the [C]ourt of [C]laims." The court dismissed the suit without prejudice to plaintiff refiling it in the Court of Claims.

¶ 14 Plaintiff filed this timely appeal.

¶ 15                                    II. ANALYSIS
¶ 16                               A. General Principles
¶ 17        Plaintiff's complaint was dismissed pursuant to section 2-619 of the Code. A motion to dismiss under section 2-619 "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Statutory immunity is an affirmative defense, properly raised in a section 2-619 motion. *Wilson v. City of Decatur*, 389 Ill. App. 3d 555, 558 (2009). When ruling on a section 2-619 motion, the court should construe the pleadings and supporting documents in the light most favorable to the plaintiff, the nonmoving party. *Id.* The court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that may reasonably be drawn in the plaintiff's favor. *Sandholm*, 2012 IL 111443, ¶ 55. The question on appeal is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Id.* (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). Our review is *de novo*. *Id.*

¶ 18                               B. Sovereign Immunity
¶ 19        The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. In response, the General Assembly enacted the Immunity Act, section 1 of which states that, except as provided in several statutory provisions—namely, section 1.5 of the Immunity Act (745 ILCS 5/1.5 (West 2014)) (concerning state employees), the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2014)), the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2014)), and the State Officials and Employees Ethics Act (5 ILCS 430/1-1 *et seq.* (West 2014))—"the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2014). For its part, the Court of Claims Act states that the Court of Claims has exclusive jurisdiction to hear "[a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency." 705 ILCS 505/8(a) (West 2014).

¶ 20        The trial court agreed with defendants that section 15(a) of the Estate Tax Act is not a waiver of sovereign immunity. There is a high bar for such waivers: they must be "clear and unequivocal" to be effective. (Internal quotation marks omitted.) *In re Special Education of Walker*, 131 Ill. 2d 300, 303 (1989). As plaintiff points out, however, sovereign immunity applies in the first instance only where the State is actually made a party in the case. The Immunity Act provides that "the State of Illinois" shall not be "made a defendant or party." 745 ILCS 5/1 (West 2014). There is considerable case law on whether sovereign immunity applies where a suit names not "the State as such" but rather a state officer or agency. See *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 43 (suit named not the State of Illinois *per se* but the board of trustees of the University of Illinois and one of its associate vice chancellors). As one might expect, sovereign immunity is not circumvented by simple party designation. "[T]he State's immunity cannot be evaded by naming an official or agent of the State as the nominal party defendant." *Smith v. Jones*, 113 Ill. 2d 126, 131 (1986). However, under what the supreme court has termed the "officer-suit" exception, a suit against a state officer or agency might not be tantamount to a suit against the State. See *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 261 (2005). At oral argument, we asked the parties

if they were prepared to discuss the officer-suit exception. Neither party felt adequately prepared to address it. We proposed the possibility of additional briefing on the subject. We have since decided against that course. Plaintiff cited the officer-suit exception in his brief. Although his remarks were rather cursory, they were sufficient to raise the issue for our consideration. Defendants had the opportunity to respond, but did not. We see no need to offer the parties a second pass on the issue.

¶ 21    The supreme court's most recent exposition of the officer-suit exception was in *Leetaru*:

"In determining whether sovereign immunity applies to a particular case, substance takes precedence over form. [Citation.] That an action is nominally one against the servants or agents of the State does not mean that it will not be considered as one against the State itself. [Citation.] By the same token, the fact that the named defendant is an agency or department of the State does not mean that the bar of sovereign immunity automatically applies. In appropriate circumstances, plaintiffs may obtain relief in circuit court even where the defendant they have identified in their pleadings is a state board, agency or department. [Citations.]

Whether an action is in fact one against the State and hence one that must be brought in the Court of Claims depends on the issues involved and the relief sought. [Citations.] The prohibition against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested. [Citation.] *The doctrine of sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court.* [Citations.]

This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not. In effect, actions of a state officer undertaken without legal authority strip the officer of his official status. *Accordingly, when a state officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, the officer's conduct is not regarded as the conduct of the State.* [Citation.] A suit may therefore be maintained against the officer without running afoul of sovereign immunity principles. [Citations.]

Of course, not every legal wrong committed by an officer of the State will trigger this exception. For example, where the challenged conduct amounts to simple breach of contract and nothing more, the exception is inapplicable. [Citation.] Similarly, a state official's actions will not be considered *ultra vires* for purposes of the doctrine merely because the official has exercised the authority delegated to him or her erroneously. *The exception is aimed, instead, at situations where the official is not doing the business which the sovereign has empowered him or her to do or is doing it in a way which the law forbids.* [Citation.]" (Emphases added and internal quotation marks omitted.) *Leetaru*, 2015 IL 117485, ¶¶ 44-47.

¶ 22    Thus, the officer-suit exception applies when the state officer is alleged to "have acted in violation of statutory or constitutional law or in excess of [the officer's] authority." *Id.* ¶ 50. The exception does *not* apply where the plaintiff alleges a "simple breach of contract and

- 5 -

nothing more" or alleges that the officer "exercised the authority delegated to him or her erroneously." *Id.* ¶ 47.

¶ 23    This distinction is illustrated by comparing some cases. In *Leetaru*, the plaintiff, a graduate student at the University of Illinois, sued state agents affiliated with the University. The plaintiff alleged that the defendants' investigation of potential research misconduct by the plaintiff violated his due process rights as established by the University's internal rules and regulations. The supreme court held that the officer-suit exception applied:

> "Defendants' alleged acts and omissions *** involve far more than a mere difference of opinion over how the rules and regulations should be interpreted or applied and are not simply the result of some inadvertent oversight or a *de minimis* technical violation. Rather, according to [the plaintiff], they constitute a fundamental disregard for core provisions governing academic discipline at the University, thereby exceeding defendants' authority and violating [the plaintiff's] constitutional rights to due process." *Id.* ¶ 49.

Thus, the court construed the complaint as alleging that the defendants "acted in violation of statutory or constitutional law or in excess of their authority" (*id.* ¶ 50), and therefore the court held that sovereign immunity did not apply.

¶ 24    In *CGE Ford Heights, L.L.C. v. Miller*, 306 Ill. App. 3d 431 (1999), several private companies and a municipality brought two multi-count complaints against the Illinois Governor, members of the Illinois Commerce Commission, and the Director of the Illinois Department of Revenue. The counts all centered on Public Act 89-448 (eff. Mar. 14, 1998), which abolished subsidies for tire burning plants. Some of the counts alleged breach of contract. The appellate court held that these counts did not state a cause of action. The remaining counts alleged that Public Act 89-448 was unconstitutional on various grounds. The appellate court held that some of these counts failed as well, but not on grounds of sovereign immunity, as the allegations that the defendants applied an unconstitutional provision brought the counts within the officer-suit exception. *Miller*, 306 Ill. App. 3d at 436, 439-40.

¶ 25    Two cases finding the officer-suit exception not applicable are *Healy v. Vaupel*, 133 Ill. 2d 295 (1990), and *Smith*, 113 Ill. 2d 126. In *Healy*, the plaintiff sued several employees of Northern Illinois University for injuries she suffered while participating as a member of the University's gymnastics team. The plaintiff alleged that her injuries were caused by the defendants' negligent performance of their duties. Since the plaintiff did not allege that the defendants "acted outside the scope of their authority or in violation of law," the officer-suit exception did not apply. *Healy*, 133 Ill. 2d at 310-11.

¶ 26    In *Smith*, the plaintiffs sued the Illinois State Lottery and its director. They claimed that the defendants misrepresented the prize pool for one of the state lotteries. The plaintiffs' claims, however, were strictly breach-of-contract claims. They did not allege that the defendants "appl[ied] an unconstitutional statute *** [or] violated a law of Illinois." *Smith*, 113 Ill. 2d at 132. Accordingly, sovereign immunity applied. *Id.*

¶ 27    Plaintiff's allegations here fall within the officer-suit exception. Plaintiff alleged that (1) the amendment to section 2(b) of the Estate Tax Act was void *ab initio* because of procedural improprieties and (2) at the very least, the amendment could not constitutionally be applied retroactively to the estates of persons who, like Parmar, passed away before its effective date. Thus, according to plaintiff, in enforcing the amended section 2(b) against Parmar's estate,

defendants *a fortiori* acted unlawfully. This suit is a textbook instance of the officer-suit exception.

¶ 28 Defendants point to the State Officers and Employees Money Disposition Act (Protest Fund Act) (30 ILCS 230/1 *et seq.* (West 2014)). The Protest Fund Act, as the supreme court has noted, "allows taxpayers to recover voluntary tax payments if certain procedures are followed." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 25 (2004). The process under the statute begins with the taxpayer remitting payment, under protest, to the relevant state entity. Once that payment has been placed into a special fund known as the protest fund, the taxpayer has 30 days to file a complaint and obtain a temporary restraining order or preliminary injunction to bar the treasurer from transferring the funds from the protest fund. If the taxpayer wins his challenge, the funds are returned to him. If he loses, the funds are given to whatever governmental fund they would have gone to if the taxpayer had not made the protest. 30 ILCS 230/2a (West 2014).

¶ 29 According to defendants, section 15(a) of the Estate Tax Law "makes no affirmative waiver of the Immunity Act" but, rather, "merely recognizes that tax disputes under [the Estate Tax Law] may be bought pursuant to [the Protest Fund Act]." Defendants contend that the Protest Fund Act is the only waiver of sovereign immunity for tax challenges and that, since plaintiff has not followed its procedures, his suit is barred. Defendants fail to recognize, however, that if a suit is not actually against the State, there is no need for a waiver of sovereign immunity. As noted, plaintiff's allegations bring his action within the officer-suit exception and, therefore, sovereign immunity is not implicated. Below (*infra* ¶ 33), we discuss the impact of the Protest Fund Act on the voluntary-payment doctrine, which defendants cite here as an alternative ground for affirming the dismissal.

¶ 30 For the foregoing reasons, we hold that the trial court erred in dismissing this action on grounds of sovereign immunity.

¶ 31 C. Voluntary-Payment Doctrine

¶ 32 Defendants ask us to affirm the dismissal on the alternative ground that the voluntary-payment doctrine applies. Defendants raised the defense below but the trial court did not address it, finding a sufficient ground for dismissal in the doctrine of sovereign immunity.

¶ 33 "Under the voluntary-payment doctrine, a taxpayer may not recover taxes voluntarily paid, even if the taxing body assessed or imposed the taxes illegally." *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 393 (1989). "A taxpayer can only recover taxes voluntarily paid if such recovery is authorized by statute." *Id.* The Protest Fund Act, discussed previously (*supra* ¶¶ 28-29), is one such means for recovery of taxes voluntarily paid. See 30 ILCS 230/1 *et seq.* (West 2014). For recovery of taxes paid *in*voluntarily, a taxpayer need not use the Protest Fund Act or any other statutory mechanism. *Geary*, 129 Ill. 2d at 395, 408 (the plaintiffs' challenge to a municipal retail tax on female hygiene products did not need to proceed under the Protest Fund Act because the plaintiffs' allegations established that they paid the tax under duress). "A taxpayer *** has paid the taxes involuntarily if (1) the taxpayer lacked knowledge of the facts upon which to protest the taxes at the time he or she paid the taxes, or (2) the taxpayer paid the taxes under duress." (Emphasis omitted.) *Id.* at 393. The disjunctive in the foregoing indicates that *either* a lack of knowledge *or* the existence of duress will establish the payment as involuntary. *Raintree Homes, Inc. v. Village of Long Grove*, 389 Ill. App. 3d 836, 858 (2009). A tax was paid under duress where "there was some necessity which amounted to compulsion,

and payment was made under the influence of such compulsion." (Internal quotation marks omitted.) *Geary*, 129 Ill. 2d at 393. "The issue of duress and compulsory payment generally is one of fact to be judged in light of all the circumstances surrounding a transaction." *Harris v. ChartOne*, 362 Ill. App. 3d 878, 883 (2005). "However, where the facts are not in dispute and only one valid inference concerning the existence of duress can be drawn from the facts, the issue can be decided as a matter of law, including on a motion to dismiss." *Id.*

¶ 34    There are no factual disputes pertaining to the existence of duress. Defendants submitted an affidavit from Flores describing plaintiff's payment of tax and interest on Parmar's estate. Plaintiff did not dispute Flores's averments, but claimed that duress was established by the Estate Tax Act's provision for penalties, interest, and personal liability. Under section 8(a) of the Estate Tax Act (35 ILCS 405/8(a) (West 2014)), an unreasonable failure to file a required tax return results in a monthly penalty of 5% of the tax to be reported, not to exceed 25%. Under section 8(b) (35 ILCS 405/8(b) (West 2014)), an unreasonable failure to pay the tax due results in a monthly penalty of 0.5% of the unpaid tax owed, not to exceed 25%. Section 9 (35 ILCS 405/9 (West 2014)) imposes interest at the rate of 9% per annum for the unpaid tax owed. Finally, section 10(c) (35 ILCS 405/10(c) (West 2014)) provides that the individual required to file the tax return, here plaintiff as executor of Parmar's estate, is personally liable for the tax to the extent of the transferred property.

¶ 35    We agree with plaintiff that the prospect of penalties, interest, and personal liability amounted to duress. Plaintiff's predicament was analogous to that of the plaintiffs in *Ball v. Village of Streamwood*, 281 Ill. App. 3d 679 (1996), who brought a constitutional challenge to the defendant municipality's real estate transfer tax. The defendant raised the voluntary-payment doctrine as a defense, noting that the plaintiffs had already paid the tax on their real estate transfer. The trial court certified to the appellate court the question of whether the voluntary-payment doctrine applied under the facts. The appellate court held that the doctrine did not apply because the defendant's municipal code "provided civil penalties and fines for failure to pay the tax." *Id.* at 688.

¶ 36    The court in *Ball* did not indicate the severity of the potential penalties and fines. Here, plaintiff reported the gross value of Parmar's estate at $5 million. Statutory penalties and interest computed on such an amount could be substantial (indeed, plaintiff was found to owe interest in the amount of $35,357, though penalties were waived). Plaintiff also faced the prospect of personal liability. We hold that plaintiff's payment of the estate tax was not voluntary.

¶ 37    Defendants, however, claim that it is significant that plaintiff paid the tax, penalties, and interest "without any communication from the State regarding [Parmar's] tax liability." Defendants do not elaborate. We see no indication in the Estate Tax Act that such "communication" is a prerequisite under the Estate Tax Act for penalties, interest, or personal liability.

¶ 38    Defendants further assert that "even if [plaintiff] had received demand letters from the State or threats of litigation asserting an incorrect tax liability, those would not have constituted legal 'duress' sufficient to warrant an exception to the voluntary payment doctrine." For this assertion defendants cite *Goldstein Oil Co. v. County of Cook*, 156 Ill. App. 3d 180 (1987). In that case, the plaintiffs, partners in a gasoline supply company, sued to recoup gasoline taxes paid to Cook County. The plaintiffs named Cook County itself, as well as its auditor and its collector. The plaintiffs alleged that their company was not the party

responsible for the tax. They claimed that they paid the tax because of the auditor's statements to the plaintiffs that, if the tax were not paid, the auditor would refer the matter to the State's Attorney for litigation and seek to shut down the plaintiffs' storage facility. The trial court dismissed the suit, finding that the voluntary-payment doctrine applied. The appellate court agreed. The court determined that the plaintiffs' allegations of duress were insufficient because (1) the threat of litigation was evidently made in good faith and (2) the threat to close down the storage facility was made 10 months before the plaintiffs paid the tax and the defendants took no action in the intervening time. *Id.* at 183-85.

¶ 39 The facts of *Goldstein* are not comparable to the facts here. There was no mention in *Goldstein* of any penalties, interest, or other such sanction that the plaintiffs faced for failing to pay the gasoline tax. In fact, *Goldstein* distinguished cases in which parties faced "immediate economic threat," such as severe monetary penalties, for failure to pay a tax or fee. *Id.* at 184 (citing *Edward P. Allison Co. v. Village of Dolton*, 24 Ill. 2d 233, 236 (1962) (the plaintiff risked stoppage of its business and "severe penalties" if it failed to pay the defendant village an electrical contractor license fee)); see also *People ex rel. Carpentier v. Treloar Trucking Co.*, 13 Ill. 2d 596, 599 (1958) ("[W]here money is paid under pressure of severe statutory penalties or disastrous effect to business, it is held that the payment is involuntary and that the money may be recovered.").

¶ 40 The pleadings and undisputed facts establish that plaintiff paid the estate tax under duress and, hence, involuntarily. Accordingly, plaintiff was not required to seek recovery under the Protest Fund Act, and the voluntary-payment doctrine is not an alternative basis for affirming the dismissal of plaintiff's complaint.

¶ 41                                   III. CONCLUSION

¶ 42 For the foregoing reasons, we reverse the dismissal of plaintiff's complaint and remand for further proceedings.

¶ 43 Reversed and remanded.